IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

YUAN REELS, Plaintiff,

v.

S. MCLEAN, Correctional Officer; A. PAVONE, Correctional Sgt.; and R. PERRY, Correctional Officer, Defendants.

9:05CV718

MEMORANDUM OPINION

This matter is before the Court on plaintiff's motion for summary judgment (Filing No. 29) and defendants' cross motion for summary judgment (Filing No. 32). The Court has reviewed the motion and cross motion, plaintiff's and defendants' statements of material facts, the transcript of plaintiff's Tier III disciplinary hearing, plaintiff's inmate grievances and appeals and both plaintiff's and defendants' supporting briefs and finds that plaintiff's motion for summary judgment should be denied and defendants' cross motion for summary judgment should be granted.

## I. Summary Judgment Standard

On a motion for summary judgment, all reasonable factual inferences must be drawn in favor of the non-moving party. See, e.g., *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003)(citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). However, to survive a motion for summary judgment, "the nonmoving party must come forward with 'specific facts

showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(emphasis omitted)(quoting *Fed. R. Civ. P. 56(e)*)(citation omitted). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)(citation omitted). Thus, "statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar* Coll., 196 F.3d 435, 452 (2d Cir. 1999)(citations omitted), *cert. denied*, 530 U.S. 1242 (2000).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy [its] burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Vann v. City of New York,* 72 F.3d 1040, 1048 (2d Cir. 1995) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)). A party "moving for summary judgment must prevail if the [non-movant] fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo,* 100 F.3d 253, 258 (2d Cir. 1996)(*citing Anderson,* 477 U.S. at 247-48). While the submissions of pro se litigants are liberally construed, see, e.g., *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994), the

fact that the plaintiff is "proceeding pro se does not otherwise relieve [him] from the usual requirements of summary judgment." *Fitzpatrick v. New York Cornell Hosp.*, 2002 U.S. Dist. LEXIS 25166, 2003 WL 102853, at *5 (S.D.N.Y. Jan. 9, 2003)(citing cases).

## II. Facts

On September 15, 2004, plaintiff Yuan Reels ("Reels") was housed at the Clinton Correctional Facility ("Clinton"). That day, Reels had a small bag of marijuana in his hand and a container of hot coffee concealed in the hip pocket of his pants as he exited the Clinton mess hall (Reels Tier III Hearing Transcript ("Hearing Tr."), p. 2-4). Reels was ordered to submit to a frisk search (Hearing Tr. p. 2). Defendant officer McLean ("McLean") noticed that Reels had something in his hand and ordered him to drop it. *Id.* at 2-3. During the frisk, while officers were attempting to find out what Reels had in his hand, the lid apparently was dislodged from the coffee container, allowing hot coffee to spill onto Reel's left thigh, causing second degree burns. *Id.* at 5-6. Within minutes, Reels was taken to the infirmary to have his burned thigh treated (Complaint Exhibit, p. 12). While at the infirmary, Reels never alleged or mentioned any other injuries or any assault by corrections officers. *Id.* at 12-14. Treatment would continue on the burned leg for several weeks and at no time did Reels ever

allege any other injuries incident to the September 15, 2004, frisk. *Id.* at 15-35.

Reels was issued misbehavior reports ("MR") charging him with possession of marijuana, refusing to obey a direct order and refusing to comply with frisk procedures (Hearing Tr. p. 2-3). At his September 17, 2004, Tier III hearing, Reels pled guilty to the first two charges and not guilty to the third charge. *Id.* At this hearing, Reels never alleged any mistreatment or assault by corrections officers in relation to the September 15, 2004, frisk which led to the MR. *Id.* at 1-7. Reels testified that the lid came off of his coffee when his legs were spread apart for the frisk. *Id.* at 4. Reels was found guilty of all three charges and was sentenced to four months in the special housing unit ("SHU") as well as four months denial of package, commissary and telephone privileges. *Id.* at 7. This sentence was never modified, reduced or overturned upon appeal.

Reels filed a grievance on January 15, 2005, with IGRC at Five Points Correctional Facility ("Five Points") in regard to the September 15, 2004, frisk, seeking compensation for his burned thigh, asserting that the burn resulted from officer's using excessive force "by choking me -- punching me and kicking me to my ribs and legs." Exhibit to Complaint (Filing No. 1), p. 1. Reels acknowledged that his grievance was out of time and blamed his delay on being moved from Clinton to Gouverneur SHU

and then on to Upstate Correctional Facility ("Upstate") Hospital the next day. *Id.* at 2. Reels asserted that at this point he "was unable to move around" and "was not allowed to take anything with me." *Id.* Upon his return to SHU, he blamed his inexperience with the law and "due to Gouverneur failing to give me assistance after several request (sic)." *Id.*

The grievance was dismissed by the Inmate Grievance Program ("IGP") supervisor at Five Points as untimely, noting that the grievance was filed more than four months after the incident date and opining that Reels "has ample opportunity to file [his] grievance complaint within a timely manner." *Id.* at 3. The IGP supervisor noted that Reels was at Upstate for nearly a month and had been at Five Points for twenty-nine days before filing his grievance. *Id.*

Reels filed a new grievance on January 25, 2005, seeking to have his earlier grievance investigated "in the name of justice." *Id.* at 4. The Inmate Grievance Review Committee ("IGRC") held a hearing on this grievance on February 3, 2005, and by majority vote in a decision returned to Reels on February 4, 2005, determined that the earlier grievance was untimely. *Id.* at 5.

Reels appealed the decision of the IGRC to the IGP supervisor. On February 18, 2005, the IGP Supervisor concurred with the findings of the IGRC. *Id.* at 6. On February 24, 2005,

Reels appealed this decision to the Central Office Review Committee ("CORC"). *Id.* On April 6, 2005, CORC affirmed the denial of Reel's grievance as untimely. *Id.* at 7.

Reels complaint was filed on June 8, 2005 (Filing No. 1), alleging that the defendants used excessive force during the September 15, 2004, frisk in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. Defendants filed their answer on November 7, 2005 (Filing No. 15), specifically asserting the affirmative defense that Reels had failed to exhaust available administrative remedies. Reels filed his motion for summary judgment on May 22, 2006 (Filing No. 29); and defendants filed their cross motion for summary judgment on July 20, 2006 (Filing No. 32).

## III. Analysis

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 states: "No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court held in *Porter v. Nussle*, 534 U.S. 516, 532 (2002), that the administrative exhaustion requirement "applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." The exhaustion requirement is a prerequisite to all prisoner claims, even if the remedy requested is not available in an administrative grievance proceeding. *Porter*, 534 U.S. at 524 (*citing Booth v. Churner*, 532 U.S. 731, 740-41 (2001)). This requirement exists in order "to reduce the quantity and improve the quality of prisoner suits . . . [and to afford] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 524-25.

The failure to exhaust administrative remedies is an affirmative defense that may be waived, *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004), and is subject to estoppel. *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). Where defendants have raised the issue of administrative exhaustion as an affirmative defense and plaintiff has plausibly countered that assertion, the court must conduct a three-step inquiry. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). First, the court must ask whether administrative remedies were in fact "available" to the prisoner. *Hemphill*, 380 F.3d at 686 (*citing Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004)). Second, the court must determine whether defendants forfeited the defense of administrative exhaustion by failing to raise or preserve it, *id.*

(*citing Johnson*, 380 F.3d 691), or whether defendants are estopped from raising the defense by their own actions inhibiting the inmate's exhaustion of remedies. *Id.* (*citing Ziemba*, 366 F.3d at 163). Third, the court must inquire whether the prisoner has alleged "special circumstances" that justify his failure to exhaust administrative remedies. *Id.* (*citing Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004)).

The New York Department of Corrections has a well-established inmate grievance procedure which was available to Reels. Under the grievance procedure, an inmate has fourteen days from the date of the incident complained of to file a complaint, but "mitigating circumstances" may toll the deadline.

Reels failed to file a grievance until January 15, 2005, more than four months after the fourteen-day deadline had expired. Reels grievance was dismissed as untimely by the IGP supervisor. Reels filed a new grievance seeking to have his original grievance investigated. The IGRC determined that the original grievance was untimely and the IGP supervisor concurred. Reels appealed to CORC which also affirmed the dismissal of the original grievance as untimely. Under the facts, it is clear that administrative remedies were available to Reels. Further, it is clear that the defendants preserved this defense by raising it in their answer to the complaint.

The court's final step is to inquire whether the prisoner has alleged "special circumstances" that justify his failure to exhaust administrative remedies. *Id.* (*citing Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004)). The Second Circuit Court of Appeals recently noted that the cases where it has recognized "that defendants' actions may estop them from raising non-exhaustion as a defense, each prisoner alleged that defendants took affirmative action to prevent him from availing himself of grievance procedures." *Ruggiero v. County of Orange*, 467 F.3d 170, 178 (2d Cir. 2006)(*citing Ziemba*, 366 F.3d at 162 (beating, threatening, and denying grievance forms and writing implements); *Hemphill*, 380 F.3d at 687 (threats of retaliation)). In *Ruggiero,* the Second Circuit Court of Appeals found that a prisoner's failure to exhaust was not excused where the prisoner "points to no affirmative act by prison officials that would have prevented him from pursuing administrative remedies." *Ruggiero*, 467 F.3d at 178. As in *Ruggiero*, Reels also points to no affirmative act by the defendants that prevented him from timely filing his grievance and the Court finds that Reels' failure to exhaust is not excused. The Court finds that Reels has not presented facts that justify an exception to the PLRA's administrative exhaustion requirement. Therefore, the Court will deny plaintiff's motion for summary judgment and grant

defendants' cross motion for summary judgment. A separate order will be entered in accordance with this memorandum opinion.

DATED this 1st day of February, 2007.

BY THE COURT:

/s/ Lyle E. Strom

______________________________
LYLE E. STROM, Senior Judge
United States District Court